Case No. 20-1469, et al. New York Paving, Inc. Petitioner v. National Labor Relations Board. Ms. Grimaldi for the petitioner. Ms. Cheehy for the respondent. Good morning. Good morning, counsel. Please proceed. Thank you, your honor. If it pleases the court, as we said in our principle brief and our reply brief, the decision here should be overturned. While we were pleased with the underlying decision in regards to a finding that there was no violation of the National Labor Relations Act with respect to the discharge of a particular employee, the remainder of the decision is lacking in many respects. The first thing that I'd like to point out to the court, and it's been characterized as harmless by the board, but it's far from harmless, is their decision to wrongfully admit a collective bargaining agreement. And to me, when you have a National Labor Relations Board case, a collective bargaining agreement is the equivalent of a statute or a regulation or a mandate that you're trying to argue doesn't apply to you. The hearing had closed. The general counsel at the board never put the CBA in. That was a calculated decision. It wasn't hidden away. It wasn't some foreign document that was unavailable. It was a calculated decision. We submitted post-hearing briefs to the judge. We squarely said no collective bargaining agreement. There should be an adverse inference. And rather than agree with our decision, the administrative law judge essentially corrected the general counsel's calculated decision and allowed the collective agreement in. We had no opportunity to cross-examine anybody from charge and party, and we could have probably used the collective bargaining agreement to show that the charge and party's terms did not apply to the work that's in question here. And you may say, well, why didn't we put the collective bargaining agreement in? Well, why should we? I mean, this is something that should have been the job of the National Labor Relations Board. The board found that it was error and said it wasn't going to rely at all on the collective bargaining agreement, so long as if we find that the board did not, in fact, rely on the collective bargaining agreement in any of its rulings, then how are you harmed? Well, it smacks of fairness. That's the first thing. The second thing is, if I had that collective bargaining agreement in my hand and they had put their witnesses on, I probably would have been able to show the judge that it just didn't apply to the particular evidence. It's essentially, it's a tree that never grew. It could have been all sorts of fruit that came from it if we had the opportunity to have that agreement there. It was a calculated decision. I believe that you cannot, well, the court could do whatever it wants, but I would argue that you can't have this type of violation being found by the board in the absence of giving us the opportunity to at least, in fairness, have the opportunity to argue that the collective bargaining agreement was essential to their case. They didn't make a prima facie case. And by the way, they amended their own board rules so that this doesn't ever happen again. That's how bad this violation was. We could have used, by the way, the collective bargaining agreement is not even a New York paving collective bargaining agreement. It's a collective bargaining agreement that's an employer association agreement. I could have asked anybody who they put on the charge and party, how is it applied to Trimestine? How is it applied to NECO? These are two companies that do the type of work that New York paving does. And we'll never- You could have asked those questions even if it wasn't in evidence. I mean, the board basically follows the federal rules of evidence. And you can cross examine someone about a particular document, even if you don't put the document in evidence. So why were you- You know, come back to the question that Judge Wilkins is asking. I don't see how you were prejudiced at all. Your Honor, with all due respect, I would argue that the collective bargaining agreement is the cornerstone to them arguing that we should have bargained in good faith. If you're going to say that this is local 175 work, where's your basis? Your basis is the collective bargaining agreement. The collective bargaining agreement is more than just an email or a letter. It is a foundational document that establishes the relationship between the two parties. That would be my answer. And yes, we did try to bring in other evidence. I think we were very persuasive in bringing it. That goes to other points in our appeal. Can I ask you, Mr. Feraldi, about- You know, part of your argument is that you were not able to that was ultimately formed. And I'm wondering, can you tell me a little bit about how the bidding process with Hallin worked? So when you put a bid in, I think New York Paving's position is that you weren't aware of the terms that would be in the contract. And then you received the contract in January. So I was wondering if- I mean, I'm just wondering, sometimes with a bidding process, you know, you're required to accept a contract if your bid is accepted. So if you could just tell me how the bidding process worked. The way it was in this case was, first of all, just to take two steps back, we're a union shop. We have a lot of unions that work for us. We give a lot of work to 175. We're talking about a tiny little fraction of work. And that fraction of work was covered by the Hallin contract. And the Hallin contract, these are big players, just like Con Edison is and National Grid. If you know anything about New York City area, it's something comparable to the fact that if I wanted to do oral argument today before all three of you, no, I basically had to participate via Zoom. We used- Hallin used us in the past. We did contract work for them. We used 175 work. We didn't think the 175 would be an issue because they let us do it in the past. And now this time they came in with a contract. It's in the record. I think it's A302, if you want to find where the clause is. And they said, this is what you had to use. You had to be, you had to use members of a particular, who are members of the Buildings Council. I guess, I guess if you could answer my question though, I'm not sure, like, did, did you have the ability to negotiate after they had accepted your bid? No, it was basically, here it is, take it. If they, if we didn't take it, they would, they would find someone else to take it. Or, or was it, were you required to take it once your bid was accepted? I'm not sure what the terms of the bidding was. I do think, I think that is potentially relevant to some of your arguments, but I didn't see anything about the bidding process in the record. To my knowledge, it was a take it or leave it. I mean, these are big players. If we didn't agree to use the, the local 1010 workers for that particular work, the contract just wouldn't have been given to us because Hallin was required now to make sure their subcontractors used unions that were part of the building trades. And, and for the life of me, I don't know why local 175 doesn't become a member of that particular organization. I mean, this case is so upsetting because of the CBA and also the fact that local 175 does not want to be part of an organization where the Hallin expects you to be part, to be, to use members of that association. I think it was a take it or leave it, your honor. We also believe that the board woefully failed when it came to the substantial evidence, when it came to the six months statute of limitations argument we made. I mean, it was so clear and obvious. These local 175 shop stewards are at our yard. They see trucks going in going out. I mean, it's the equivalent of someone who normally plays football, seeing helmets and pads and footballs going out. You know, they're going to be playing a game of football. It was seen by we have emails, we have testimonial evidence, and the board made short shrift of it. They didn't address it in any meaningful way. And we believe that they had as far back as April of 2018. And they waited until January of 2019 to file their unfair labor practice charge. I believe, based on everything I've read in its totality, that initially they didn't see that as a violation. They thought it was covered under the regulations that were now in effect. There was a favorable section 10K decision from the board itself, which gave a their own union attorney, Chaykin, said in a prior hearing, he thought that this type of work was basically related to concrete work. I mean, if you're going to cut into a sidewalk, there's no such thing as an asphalt sidewalk. It's a concrete sidewalk. We're talking about a very thin layer of asphalt on top of a sidewalk or in a street. And somehow they must have thought otherwise, and then they filed, but filed too late in January of 2019. I see that my clock is done for my eight minutes. All right, we'll hear from you on rebuttal. We'll hear from the board. Good morning, your honors. Barbara Sheehy for the National Labor Relations Board. I want to just touch on a couple of things that you were speaking with, with my opposing counsel there. But the first thing I want to talk about is Judge Rao asked about the bidding process. And I think your honor is absolutely correct. There is nothing in the record. There are a lot of assertions that it was a take it or leave it contract and references to, I don't think there's any dispute that these are big players in the New York construction industry. But I think what is the most relevant point is rather than speculating, was it take it or leave it? I think it was because these people were these kinds of construction guys. We know there is nothing in the record that New York Paving had to accept the contract and could do nothing with Halen. And in fact, I think a very important point in that regard is that the New York Paving, the company says they were surprised actually when the terms came in because notwithstanding the fact that Con Ed had required this building trade council membership before, it had never been enforced. So Halen had allowed Local 175, a non-member, to do work even under a Con Ed contract. And so you could speculate further that it could have been take it or leave it, or it could have been that New York Paving, had they tried to go to Halen and say, hey, listen, I see this new term in here. You've let us in the past slide on this. Any chance we could negotiate six months grace period or 12 months or anything? There's nothing in the record that- Ms. Sheehy, what about under the general terms and conditions, which is on the appendix of page 264, it says for acceptance of the contract, the subcontractor may accept this agreement only by signing and returning it to the contractor without modification within three days. Does that suggest it's a take it or leave it contract? Ms. Sheehy, I don't believe so. That's my understanding of contract language. I don't think that that's an unusual aspect to have in there. And I don't know that we know, for instance, I think that's standard language in a contract. And I don't think it's fair to say that under no circumstances, that all the time, that means no modifications. We know that parties can modify terms. We know that the lawyers have drafted them up and tried to make them airtight. But at the end of the day, no, I don't know that there was any evidence that somebody tried or somebody read that and said, we didn't think we could do anything. What the testimony was, was Maselli said they got the contract sometime in early January and they signed it. So you have knowledge of the terms and at the time of signature, because it wasn't executed until January 9. And you have at the time, they know they have an existing contract with local 175, even in this multi sort of employer thing. So you have an employer that knowingly executed a contract that put it on fundamental. That is what the record shows. The record doesn't show that it was a take it or leave it. Certainly, there are aspects of a take it or leave it in that agreement, like your honor just pointed out. But as I said, there are elements that are completely missing, too, in the record that New York paving didn't even try. Pick up the phone and call Halen and say, hey, I see there's no modification. This is really going to put us in a bind. We already have a CBA. What can we do? So I think the biggest point that I wanted to make, although I've done it in quite a roundabout way, is there is nothing in the record to support the notion that it was a take it or leave it. And even if it was, even if it wasn't, was there language in the contract that said that the subcontractor, I guess, could get prior approval from Con Ed to use a union that was not a part of this conglomeration? Not that I'm not that I'm aware of. Not that I'm aware of. I was only relying on the fact that this restriction had existed before and that restriction notwithstanding, Halen and New York paving were continuing to use non-members to the council. So I was suggesting that even though your honor's right, there's nothing in the contract that says that they could do that, but there's nothing saying they can't. And the past practice or the past relationship, rather, between these parties suggested that it was possible. But let's There's no reason the New York paving couldn't leave the contract in. Let's say they couldn't change it. The record was clear. But what they still could do is they had an existing contractual or past practice relationship with local 175. They could have walked away. They could have not done the asphalt work rather than enter into a contract with Halen that they're claiming they over the discontinuation of that work. They did nothing. They signed a contract, knowing at the time they signed it, that it conflicted with an existing contract and then claim after the fact we could do nothing. And the board does not accept that as fulfilling its obligation to bargain under the law. And I'd like to move just quickly to because I think Can I just ask a quick question about remedy, even if we agree with you? Sure. It was a violation. How is a remedy to rescind the unilateral transfer of the work to local 1010 the proper remedy instead of a make whole remedy, as was done in NICO construction and trimessing construction? I thought that the order was both, to be honest. I thought it was, and right. So there's, if you look at, sorry, my page numbers are different than the record. I think it's 215 of the appendix. It's the page three of the DNO. There's both a rescission order and a make whole remedy. So how is the, the rescission part in, how would that work? And how is that really appropriate or enforceable? Well, how it would work is they would rescind their, the board's order would require that New York paving can't give the work to 1010. But I think your honor is getting at the contract with Halen is going to prevent New York paving, giving that work to local 175. But what they could, what they'll have to do under the order. So they rescind it. So they stopped giving the work to local 1010, and then they noticed the union bargain with the union. And then going forward, once they've satisfied their statutory obligation, then under those circumstances, however, that shakes out, whether that goes to 1010, or I don't know how else that would work out. And then also in the meantime, there's the make whole remedy for the local 175 workers who unlawfully denied the opportunity to do the work until New York paving had fulfilled its bargain obligation. Now, to be fair, during a compliance hearing, which is, I think your honors all know this, the board operates on a bifurcated process. There's the liability phase, which is what we're talking about now. And then there's the compliance phase or the monetary aspect of it. During a compliance hearing, certainly they could come forward and say they could limit the make whole remedy and say, hey, we shouldn't have to pay for all of these hours because we could not have given you the work. The only other scenario would have been if we didn't give it to 1010, it wasn't going to you. So during a compliance proceeding, they can raise some of the issues as it relates to money that is owed. But as far as the liability portion of it goes, that is rescission first bargaining. And then if there's an issue with the make whole remedy, they could argue, like I said, in compliance, that 175 would not have gotten any money, irrespective of New York paving's actions, if that makes sense. I don't know if that answers your question. Yes, thank you. Ms. Sheely, I had a question about, you know, this issue about whether this change was de minimis. And the board argues that that's a question of a fact, you know, that gets substantial, you know, if there's substantial evidence we uphold the board's decision. But I'm wondering, you know, this question of whether change is de minimis, isn't that more like a mixed question of law and fact? I don't I don't think so. I think the board, I'm just thinking about your question, the board has the board, whether it's de minimis, they look at the effect right on the unit. But question. But on top of that, the let's remember that the board also views the giving of non I'm sorry, the permanent transfer of unit work to non unit employees as an adverse effect triggering a bargaining obligation. So the de minimis aspect of it, I think, is a little bit of a red herring. And it was addressed by the board, certainly, but it was addressed because the employer raises it the employer by by saying it's de minimis, they concede the violation, right? You just say, yes, I committed a violation. It just wasn't that big of a deal. But what they don't address when they say it's not that big of a deal, because it was only 15 hours, it was only 10, or it was however many, it was only a four top crew, whatever was what they never address, they didn't do it to the board, and they don't do it to this court, they don't address the issue of any time there's a permanent transfer of unit work to non unit employees, there's an adverse effect on the unit that triggers a bargaining obligation. So I do think so I'll stand by the board's view that a de minimis finding is should be reviewed under substantiality of the evidence. But I'm not even sure the court needs to consider that in this case, because of the undeniable, indisputable permanent transfer of work that triggered a bargaining obligation that the employer doesn't contest. As far as I can see, they don't take issue with that in any of the because the ultimate legal question is whether there's been a change to the terms and conditions of employment, right? And then these other terms are sort of around that legal question. So I mean, isn't there some legal determination that is the board is making ultimately about a violation under the statute? Whether there's the violation, certainly, Your Honor is right. But that's also reviewed under a substantiality of the evidence, whether there's been a violation of the statute. I believe that this court even reviews a board finding in that regard, as under a substantial, a substantiality of the evidence standard. I see my time is up. I'm happy to try again, if that wasn't satisfactory, but I see my time is up. And unless there were other questions, or if there's a follow up judge I'm fine. Thank you. Thank you. All right. Thank you, counsel. We'll hear from counsel for New York paving on your body. You may proceed, sir. I apologize, Your Honor. First of all, New York paving concedes nothing. We believe there was no violation at all. We argued the de minimis because it really is de minimis. It's an alternative argument. We're talking about a fraction, 15 hours. We put in a whole bunch of records and we put in testimony, which was unrefuted by the board. What the board did was go back to a prior hearing and took language that really was not applicable to the situation at hand, because this is essentially new work. And there is substantial evidence to show that it was in fact de minimis and there was no violation. That's number one. Number two, I mean, to this, even now, my adversary hasn't explained why the board chose not to put the collective bargaining agreement into evidence. No one seemed to want to. She doesn't want to seem to answer that question. And I made that front and center of my arguments. Number three, the idea that this very large contract that we had with Halen, the way we should have handled it was to walk away from it, not get the work, not give all the other asphalt work that comes with it to 175. I mean, I got to tell you how I mean, futility is not something we should all strive for in our lives here. And I think that's the argument that she's making is that it's a futile argument. We have testimony from Peter Miscelli in the record and he is a general manager over at New York Paven and there was nothing they can do. This was a dictate that came down from Con Edison. It's no different than me who wanted to do this here and orally right in front of you live. And the court said no. Okay, even though the Supreme Court is doing live hearings, live arguments, there are times when you just have to take what's given to you or you don't get anything. I believe my two minutes are up. If anybody has any questions, I would just simply like to tell the court to not enforce this board order to grant our petition. There are fairness problems with it. There are substantial evidence problems with it. There's a failure to follow the law problems with it. It doesn't make any sense. It's really contrary to how you run a type of job that you do when it comes to doing concrete and asphalt. All right. Thank you, counsel. We will take the case under advisement.
judges: Wilkins, Rao, Randolph